ERNEST V. SHATTUCK *vs.* JAMES L. SIMONDS.

Suffolk. March 9, 1906. — May 16, 1906.

Present : KNOWLTON, C. J., MORTON, LATHROP, LORING, & BRALEY, JJ.

*Malicious Prosecution.*

In an action for alleged malicious prosecution, if it appears that in the proceedings alleged to have been instituted by the defendant the plaintiff was discharged by a court having jurisdiction to determine whether he should be held for trial in a higher court, and there is evidence on which it might be found that it was the purpose of the defendant to cause the plaintiff to be prosecuted, that the making of the complaint and the subsequent arrest of the plaintiff were put in train by him, that the defendant offered money to one of the plaintiff's witnesses if she would aid him in proving that the plaintiff was the person guilty of the offence charged, and if there also is evidence from which the inference properly could be drawn that the defendant had manifested a hostile feeling toward the plaintiff and said that because of his previous conduct he wished to see him apprehended, there is evidence entitling the plaintiff to go to the jury.

TORT for alleged malicious prosecution. Writ dated November 22, 1901.

At the trial in the Superior Court before *Sherman,* J. the following facts appeared :

The defendant was the owner of a dwelling house at No. 10 Upton Street in Boston, and some time between Saturday November 9, and Monday November 11, 1901, this house was broken into and lead pipe, faucets and plumbing were stolen. On

November 15, 1901, complaint was made against the plaintiff by James G. Curtis, a police officer, and a warrant was issued. The complaint charged the plaintiff with entering the dwelling house of the defendant and stealing and carrying away five lead traps and ten feet of lead pipe. On November 19, 1901, the plaintiff was arrested upon the warrant; on November 20 he was taken before the Municipal Court of the City of Boston, where his trial was begun. On November 21 his trial was concluded and he was discharged, and he brought this action on the same day but after his discharge.

The plaintiff testified that he lived in Everett and was an inspector of cars on the Boston Elevated Railway; that in 1897 he went to work for the defendant, looking out for his houses and collecting rents which amounted to $1,000 or more a month, acting as a sort of general agent for the defendant; that he collected rents for the defendant until just before he was discharged; that the reason for his discharge was that the defendant wanted him to receipt for $3 a week more than he had received; also that the defendant wanted him to testify falsely as to the burning of the defendant's buildings; that he was discharged by the defendant on October 28, 1901, and the defendant threatened at that time that he would put him behind the bars; that he was arrested by officer Curtis who was in uniform, and was taken from No. 47½ Berkeley Street, where he had just opened a real estate office and stationery store, to police station No. 5 on East Dedham Street, Boston, and afterwards was taken to the Tombs and brought before the court; that he was arrested on November 19, 1901, taken before the court on November 20, and on November 21 was discharged.

There was other evidence which is described or referred to in the opinion. At the close of the evidence the judge at the request of the defendant ruled that upon all the evidence the plaintiff was not entitled to recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

The parties agreed that if the plaintiff's exceptions were sustained, judgment should be entered for the plaintiff in the sum of $500; otherwise, judgment was to be entered for the defendant upon the verdict. In case of the death of the defendant judgment was to be entered *nunc pro tunc.*

*J. J. O'Connor*, for the plaintiff.

*C. W. Rowley*, for the defendant.

BRALEY, J. To sustain an action for a malicious prosecution it was incumbent on the plaintiff to offer evidence from which it could be found not only that the prosecution was terminated in his favor, but that it was instituted by the defendant without having probable cause to believe that he was guilty of the crime alleged, and that in causing a complaint to be made charging him with a criminal offence he was actuated by malice. *Stone* v. *Crocker*, 24 Pick. 81, 85. *Bacon* v. *Towne*, 4 Cush. 217. *Ellis* v. *Simonds*, 168 Mass. 316. If the evidence upon these issues is conflicting, such questions are for the determination of a jury under suitable instructions, and a verdict having been ordered for the defendant we proceed to an examination of the testimony to ascertain if this direction was right. In such an inquiry neither the credibility of witnesses nor the weight to be given to their evidence is of importance. That the plaintiff had been discharged by a court or magistrate having jurisdiction at least to determine whether he should be held for trial in the Superior Court is not disputed, and this discharge must be deemed to have ended the prosecution. *Moyle* v. *Drake*, 141 Mass. 238, 242, and cases there cited. While the defendant did not appear at the trial of the present case, in his deposition which was read he denied having caused the arrest, and said that until he was notified to appear as a witness in the criminal proceedings he had not learned of the plaintiff's arrest, or that he was charged with having committed the crime. But upon referring to the evidence offered by the plaintiff this denial was met by testimony of alleged statements of the defendant to the effect that it was his purpose to cause the plaintiff to be prosecuted, and accordingly he had taken such action. This, if believed, was enough to show that the making of the complaint and the subsequent arrest were put in train by him. It also appears that he went so far as to offer a pecuniary consideration to at least one of the plaintiff's witnesses if she would aid him by supplying testimony from which the plaintiff's identity as being the thief might be established, and without which his conviction might be defeated. When this evidence is united with the further proof from which a legitimate inference could be drawn

that the defendant had manifested a hostile feeling toward the plaintiff by stating in substance that although he was his nephew and had been in his employment for a considerable period of time he had been unfaithful, and because of his conduct he wished to see him apprehended, the elements are supplied not only of bad faith, but of such doubt as to his guilt as to show want of probable grounds which would lead a reasonable man to believe him guilty, and, therefore, a case was presented which entitled the plaintiff to go to the jury. *Cheever* v. *Sweet*, 151 Mass. 186. *McIntire* v. *Levering*, 148 Mass. 546. *Connery* v. *Manning*, 163 Mass. 44.

The ruling directing a verdict for the defendant being erroneous, the plaintiff's exceptions must be sustained, but according to the agreement of the parties if this is done judgment is to be entered for the plaintiff in the sum of $500.

*So ordered.*